## L. J. & J. W. Pierce *v.* James S. Ridley *et als.*

Will. *Conflicting clauses. Construction of.* The will was made in 1870, in which year the testatrix died. After giving special legacies to her several children, she directed that "the balance of her estate be equally divided among the heirs of her body." The will closes with this clause: "The portion that goes to my sons.I give to the heirs of their bodies, and hereby appoint each of my sons trustees, without bond, of his respective portion."

Held, That the intention of the testatrix, as expressed in the last clause, is in conflict with the intention expressed in the former clause, and for the reason that it is the last expression of testatrix's intention, it must prevail and annul the absolute estate devised by the former clause to her sons, vesting them merely with the legal title of their respective portions, as trustees for their children, who take the beneficial interest in the portions of the residuary estate, coming to them under the division.

Middleton *v.* Smith, 1 Cold., 144; Woodrum *v.* Kirkpatrick, 2 Swan., 224.

---

### FROM RUTHERFORD.

---

Appeal from the Chancery Court.   A. S. Marks, Chancellor.

E. D. HANCOCK for Pierce.

J. W. AVENT for Ridley *et als.*

NICHOLSON, C. J., delivered the opinion of the Court.

The question in this case is, whether James S. Ridley took such an interest, under the will of his mother, Rebecca T. Ridley, as could be subjected by attachment to the satisfaction of his debts? The will was made in 1870, in which year testatrix died. After giving specific legacies to her several children—of whom there were ——, James L. being one, and to whom a legacy of $800 was given—she directed that "the balance of her estate be equally divided among the heirs of her body." The will closes with this clause: "The portion that goes to my sons, I give to the heirs of their bodies, and hereby appoint each of my sons trustees, without bond, of his respective portion."

It is insisted for the creditors, that under these provisions of the will, James L. Ridley took either an absolute, or a life estate in the portion of the estate directed to be divided equally among the heirs of the body of testatrix.

On the other hand, it is insisted for the two minor children of James L. that the estate was vested in them, and that their father only took the legal title as their trustee.

It is clear that under the provision directing the balance of her estate to be equally divided among "the heirs of her body," testatrix meant among her children.

In the next clause she directs that "a majority of her heirs should elect an administrator." This shows that she used the word "heirs" as meaning "children."

It is equally clear that the language used in directing an equal division among her children, would vest in the children the absolute title to their respective shares, unless the intention manifested by this language was modified or changed by a different intention expressed in the concluding clause already quoted.

The cardinal rule in the construction of all wills is to ascertain from the language used, aided by surrounding circumstances, the intention of the testatrix, and when this is ascertained it becomes the law of the case, if this intention be not in contravention of some fixed rule of property, or of public policy. In the present case there is nothing in the surrounding circumstances, as developed in the bill, from which we can derive any assistance in ascertaining the intention of the testatrix. We must, therefore, look for it, as best we can, in the language employed by her.

Nor is there any thing in any fixed rule of law or of public policy which stands in the way of the enforcement of the intention of the testatrix. The only question is, what disposition did she intend to make of her estate by the language used?

1. As already stated, the language used in directing an equal division among her children clearly indicates an intention to vest in them the absolute estate. But the language used in the concluding clause is as

clearly inconsistent with such intention.    Nor can it
be maintained that the use of the words: "I give to
the heirs of their bodies," either retains in the sons,
or vests in them an absolute estate, because it is mani-
fest that throughout the will the testatrix uses these
words as synonymous with children, and because it is
not a devise to the sons and the heirs of their bodies,
as in the case of *Middleton* v. *Smith*, 1 Cold., 144,
but a devise first to the sons, and then a distinct and
direct devise of the same property to their children,
with trustees appointed to hold it for the children.
For a like reason the case of *Woodrum* v. *Kirkpatrick*,
2 Swan, 224, is not applicable to the present case.
This latter case involved the construction of a will
made before the passage of the Act of 1852, abolish-
ing the rule in Shelly's case, and so far as it was
decided on that rule it can be no authority in con-
struing the present will.    We are, therefore, of opinion
that the intention of the testatrix, as expressed in the
last clause, is in conflict with the intention expressed
in the former clause, and for the reason that it is
the last expression of testatrix's intention, it must pre-
vail, and annul the absolute estate devised by the
former clause.

2. It is insisted, however, that if James L. did not
take an absolute estate in an equal share of the resid-
uum, that he took a life estate therein.    This posi-
tion is pressed with much force, upon the ground that
it would be unreasonable to suppose that in dispens-
ing her bounties the testatrix would pass over her

children and make provision alone for her grand-children, when no reason is assigned in° the will, and none found in the surrounding circumstances, for such an unusual disposition of property by a parent. We feel the full force of this suggestion, and yet we have no right to inquire or determine what disposition the testatrix ought to have made of her property, but simply to ascertain and declare what disposition she has made. If it was her will to pass over her children, with or without reason, and to bestow her bounty upon her grand-children, or even upon strangers in blood, we are bound to concede that as the owner of her property she had the right to so dispose of it, and our duty is confined to the ascertainment and enforcement of her will.

The obvious meaning of the last clause of the will is, that testatrix gives to the children of her sons the portions of her residuary estate, which, upon the division provided for, should fall to her sons, and she removes all room for doubt as to her intention, by appointing her sons trustees for their respective portions, excusing them from giving bonds as such trustees. It is fairly to be inferred that she intended her sons to take the management, control and use of their respective portions, but as trustees for their children, as the beneficiaries designated by her. The only intimation that the sons are to have any beneficial interest is found in the direction that they are not required to give bonds as trustees. There is nothing in the clause from which it can be deduced, by any

L. J. & J. W. Pierce *v.* James S. Ridley *et als.*

fair interpretation of her language, that she intended her sons to have life estates.    To so hold would be to interpolate words, and thus make instead of construing testatrix's will.

3. From what we have already said, the conclusion is, that the children of the sons take the beneficial interests in the portions of the residuum coming to them, respectively, under the division, with the legal title vested in the sons, respectively, as trustees of their children, and the trustees to hold the respective portions without giving bonds.

It follows that the Chancellor erred in overruling the demurrer.

The decree will be reversed, and the bill be dismissed as to the portion of James L. Ridley in the residuum sought to be reached by the attachment.

The costs will be paid by complainants.